UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

CAMBRIA R.,                                          Case No. 1:20-cv-01717-AR

                    Plaintiff,                       OPINION AND ORDER

        v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.

_____

**ARMISTEAD, Magistrate Judge**

        Plaintiff Cambria R. (her last name omitted for privacy) seeks judicial review of the

Social Security Commissioner's final decision denying her application for disability and

disability insurance benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§

401-403, 1381- 1383. In this case, the Administrative Law Judge determined that Cambria's

statements about the intensity, persistence, and limiting effects of her symptoms conflicted with

the medical and other evidence in the record. The ALJ explained that Cambria did not give full

effort during a medical exam, her activities of daily living were inconsistent with total disability, and her symptoms were inconsistent with the medical evidence. Cambria asserts, however, that the ALJ failed to make specific findings about three of her symptoms: fatigue, vertigo, and panic attacks. Consequently, in Cambria's view, the ALJ's residual functional capacity (RFC) assessment was not supported by substantial evidence. Because the court concludes that the level of specificity advanced by Cambria was not required and that the ALJ provided specific, clear and convincing reasons supported by substantial evidence, the court affirms.[1]

## ALJ'S DECISION

In denying Cambria's application for Title II and Title XVI disability benefits, the ALJ applied the required five-step sequential evaluation process.[2] Tr. 17 - 26. Relevant to this review, the ALJ determined as step two that Cambria has the following severe impairments: uncontrolled type I diabetes mellitus; obesity; fibromyalgia; major depressive disorder; a panic disorder; and cannabis use. Tr. 18. After careful consideration of the entire record, the ALJ found that Cambria has the RFC to perform sedentary work (as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a)) but must change positions between sitting and standing at will while remaining on task; can understand, remember, and carry out simple, routine, and repetitive tasks; and can tolerate only occasional interaction with coworkers and the public. Tr. 20. Given that RFC, the ALJ found at

---

[1]    Cambria raised a constitutional challenge to the authority of the former Commissioner to delegate decision-making to the ALJ and the Appeals Council. Cambria has, in light of *Kaufman v. Kijakazi*, 32 F.4th 843 (9th Cir. 2022), moved to strike that challenge. ECF No. 26. The court grants the motion and strikes her constitutional argument.

[2]    To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

step five that jobs exist in significant numbers in the national economy that Cambria can perform, including electronics worker, hand finisher, and inspector packer. Tr. 26.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation and citation omitted); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020); *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Trevizo*, 871 F.3d at 675; *Garrison*, 759 F.3d at 1009. "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

At issue in this review is whether the ALJ properly evaluated Cambria's subjective symptom testimony. To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. §§ 404.1529, 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090; 1102 (9th

Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Second, absent affirmative evidence that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony regarding the severity of the symptoms. *Trevizo*, 871 F.3d at 678; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are specific enough to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms" about which the claimant complains. *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008)); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013).

Cambria argues that the ALJ erroneously evaluated her subjective symptom testimony by failing to specifically address her vertigo, fatigue, and panic attacks. Cambria argues that the ALJ relied on general findings to discount her testimony. The court understands Cambria to contend that the ALJ erred here by failing to link specific evidence that undermines her testimony to *each and every* symptom she testified to in arriving at the RFC assessment.

The Ninth Circuit demands more than a summary of the medical evidence and generic, high-level reasons why a claimant's allegations conflict with that evidence. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The Ninth Circuit "requires the ALJ to specifically identify the

testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony." *Id.*; *Brown-Hunter*, 806 F.3d at 494. Yet "[o]ur cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Lambert*, 980 F.3d at 1277. Thus, the ALJ was not required to provide the granular level of specificity that Cambria's suggests.

The ALJ did not make a finding of malingering and provided three reasons for discounting Cambria's symptom testimony: (1) she failed to give full effort on testing; (2) her activities of daily living conflict with her alleged limitations; and (3) her testimony is inconsistent with the medical record. *Ghanim*, 763 F.3d at 1163. As discussed below, the ALJ did more than cite generalized, non-specific reasons. The ALJ adequately explained which testimony was not credible and which evidence contradicted that testimony in line with the specificity required by the Ninth Circuit. The ALJ's reasons are backed by substantial evidence and provide specific, clear and convincing support for discounting Cambria's subjective symptom testimony.

A.    ***Failure To Give Full Effort***

In the decision, the ALJ discussed Cambria's failure to provide full effort during an October 2017 consultative examination performed by Michael Henderson, D.O. Failure to give "maximum or consistent effort" during a physical evaluation is a compelling reason to discount subjective symptom testimony. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *English v. Saul*, 840 F. App'x 241, 242 (9th Cir. 2021) (holding ALJ provided clear and convincing reasons to discount claimant's testimony because she "exhibited poor effort during neurological testing"); *Massengill v. Colvin*, Case No. 6:13-cv-00791-HZ, 2014 WL 3695541, at *4 (D. Or.

July 23, 2014) (holding failure to give full effort on physical examination was compelling reason to reject claimant's testimony).

Dr. Henderson conducted a comprehensive physical examination of Cambria on behalf of Disability Determination Services. Tr. 450. Cambria reported to Dr. Henderson that her vertigo is the most impairing, and that it is constant and often renders her bedridden. Tr. 450. Cambria informed Dr. Henderson that her diabetes causes cracking, bleeding, and swelling in her feet so severe that she is "in a ball on the floor crying because she can't stand up." Tr. 450. Cambria rated her pain from fibromyalgia at eight on a ten-point scale, stated that she feels like she has bruises all over her body, and that "every square inch hurts." Tr. 450. On examination, Dr. Henderson found that "when testing strength, full effort was not provided[,]" yet he "was able to elicit 5/5 strength" and that Cambria "would act as if in pain, but there was no give way or ratcheting." Tr. 451. Additionally, as the ALJ correctly observed, when examining Cambria for fibromyalgia, Dr. Henderson found that Cambria stated, "everything was painful even to very light pressure, throughout all 4 extremities . . . . Superficial pressure was used and control points were also positive." Tr. 451. Dr. Henderson opined that "there are no complications or symptoms from the diabetes that are impairing her from working. Position sense and sensation are intact to prevent her from falling and injuring herself." Tr. 452. Additionally, based on his contradictory findings on fibromyalgia, Dr. Henderson opined it "is not clear that she has pain or any functional limitations." Tr. 452. And, Dr. Henderson did not find any clear diagnosis or documentation of lyme disease, and thus could not recommend any functional limitation based on that impairment. Tr. 452.

The ALJ accurately summarized Dr. Henderson's examination, including that Cambria

complained of severe vertigo, widespread pain from fibromyalgia, and that her diabetes caused cracking, swelling, and bleeding in her feet. Tr. 21, 450. The ALJ specifically detailed that contrary to Cambria's allegations, Dr. Henderson's examination revealed five out of five motor strength with intact sensation, reflexes, and muscle tone. Tr. 21, 451. The ALJ explained Dr. Henderson found Cambria had full range of motion in her extremities, a normal gait, and had multiple positive fibromyalgia tender points. Tr. 21. The ALJ highlighted that Dr. Henderson found "contradictory findings during the examination, including non-organic pain findings, positive control tender points, and lack of full effort." Tr. 21. The ALJ's findings about Dr. Henderson's examination are supported by substantial evidence and are unchallenged by Cambria. Given the degree of impairment alleged, the court concludes the lack of full effort on testing with Dr. Henderson is a compelling reason to reject Cambria's testimony.

**B.    Activities Of Daily Living**

Activities of daily living may provide a basis for discounting a claimant's subjective symptoms if those activities contradict testimony of total disability or meet the threshold for transferable work skills. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *superseded by regulation on other grounds as stated in Schuyler v. Saul*, 813 F. App'x 341, 342 (9th Cir. 2020); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ discussed Cambria's activities of daily living to illustrate the former.

In the decision, the ALJ found that Cambria's activities of daily living conflict with her allegations and detailed that she is able to perform adequate self-care, drives, attends parenting classes weekly, engages in household chores, takes care of her young daughter, handles her finances independently, and shops in stores. Tr. 23. The ALJ also discussed that Cambria walks

her roommate's dog and walks her daughter to and from the bus stop four times a week. Tr. 23-24. Most notably, the ALJ stated that Cambria's ability to engage in several long-distance drives across states undermined her allegations of severe impairments and total disability. Tr. 24.

In her briefing, Cambria acknowledges that her ability to drive between states is "facially inconsistent with her allegations," nevertheless, she contends that the ALJ should have made further inquiry and that the record fails to contain enough information on which to discount her subjective symptom testimony on this basis. Pl. Br. at 11. The court disagrees.

The ALJ cited the June 27, 2018 Cooperative Disability Investigations Unit (CDIU) report. Tr. 24. The CDIU report was obtained based on a fraud referral. Tr. 578. An ALJ may rely on CDIU findings. *See Richards v. Berryhill*, 713 F. App'x 545, 548 (9th Cir. 2017) ("The ALJ did not err by giving great weight to the evidence and testimony submitted by the Cooperative Disability Investigation Unit."); *Elmore v. Colvin*, 617 F. App'x 755, 757 (9th Cir. 2015) (rejecting argument that the ALJ improperly relied on a CDIU investigation noting "the Social Security Act expressly authorized the Commissioner to conduct such investigations."). The CDIU report shows that in September 2017, Cambria drove from Albany, Georgia to Oregon, with stops in Arkansas and Oklahoma. Tr. 586. The report provides Cambria informed the investigator that "[o]n the leg of the trip from Oklahoma to Oregon, she drove straight through in two days, stopping only for gas and to use the bathroom." Tr. 586. Thus, contrary to Cambria's assertion, the CDIU report contained contradictory information — that Cambria cannot sit for longer than thirty minutes and that driving exacerbates her vertigo. Tr. 586-87.

Moreover, contrary to Cambria's assertion, the ALJ asked about the CDIU evidence at the hearing, asking Cambria about going "on a long-distance car trip in the past couple of years,"

and Cambria admitted to driving across the country in September 2017. Tr. 42-43. Cambria also admitted at the hearing she drove from Oregon to Reno, Nevada in November 2019 when a family member passed away. Tr. 43. Based on this testimony and the report itself, the ALJ's finding is fully supported by substantial evidence and the ALJ reasonably could conclude that Cambria's activities conflict with her allegations of total disability.

The ALJ also detailed that contrary to Cambria's allegations of severe restrictions on her ability to sit, stand, and walk, Cambria engages in a variety of fairly extensive daily activities, including walking her roommate's dog several times per week, and walking her daughter to the bus stop daily. Tr. 23-24 (citing Tr. 849 (treatment note providing Cambria "has been walking her new roommate[']s dog at least a few times per week. Walking her daughter to the bus stop daily and even ran back from the bus stop yesterday"), 856 (treatment note stating Cambria reported walking the dog "at least a few times per week")).

Based on the quantity and variety of daily activities described by Cambria in the record, the ALJ could find that Cambria's symptom testimony was inconsistent with her allegations of total disability and discount it on that basis. *Thomas*, 278 F.3d at 959 (upholding ALJ's adverse credibility determination where claimant's testimony was inconsistent with her ability "to perform various household chores such as cooking, laundry, washing dishes, and shopping"); *see Nicole B. v. Comm'r Soc. Sec. Admin.*, 3:20-cv-00925-YY, 2021 WL 4488587, at *4 (D. Or. Sept. 30, 2021) (finding claimant's medical record and daily activities did not support severity of symptoms alleged). The court further concludes that on this record, when the ALJ's first and second rationales are combined, they amount to specific, clear, and convincing support for the ALJ's rejection of Cambria's subjective symptom testimony. *Molina*, 659 F.3d at 1113 (finding

failure to follow treatment and daily activities inconsistent with allegations of total disability);

*Konni M. O. v. Comm'r Soc. Sec. Admin.*, 3:20-cv-01050-AC, 2021 WL 6503692, at *6 (D Or.

Dec. 28, 2021), *adopted by* 2022 WL 160969 (Jan. 18, 2022) (concluding that inconsistency with

medical evidence and activities of daily living were sufficiently specific, clear, and convincing

reasons to discount claimant's testimony).

**C.      *Inconsistency With Medical Evidence***

        In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether

it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-

(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. A lack of objective medical evidence

may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc.*

*Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing

*Reddick*, 157 F.3d at 722 ("[T]he Commissioner may not discredit [a] claimant's testimony as to

the severity of symptoms merely because they are unsupported by objective medical

evidence.")). But when coupled with other permissible reasons, inconsistencies between a

claimant's allegations and objective medical evidence may be used to discount a claimant's

testimony. *Adaline S.G. v. Comm'r Soc. Sec. Admin.*, Case No. 6:20-cv-01129-AC, 2021 WL

5316987, at *3 (D. Or. Nov. 15, 2021); *Tatyana K. v. Berryhill*, No. 3:17-cv-01816-AC, 2019

WL 464965, at *4 (D. Or. Feb. 6, 2019) (citing *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d

1190, 1197-98 (9th Cir. 2004)).

        In the decision, the ALJ detailed many inconsistencies between Cambria's alleged

symptoms and the objective medical evidence. The ALJ discussed that with respect to Cambria's

diabetes, she complained of frequent urination with incontinence, nocturia, episodes of

hypoglycemia and hyperglycemia, with significant fatigue, an inability to lose weight, and

burning in her feet. Tr. 21. And, with respect to Cambria's fibromyalgia, she complained of

generalized pain, tenderness, numbness, fatigue, and confusion. Tr. 21-22. Unlike Cambria's

allegations, the ALJ cited many physical and neurological examinations that have shown

variable gait with some tenderness to palpation and moderate heel callus formation, but that she

maintains full range of motion, normal Romberg (balance) testing, intact peripheral pulses, and

intact strength, sensation, reflexes, and muscle tone. Tr. 22 (citing Tr. 451-52, 464-65, 486, 554,

605, 706, 721, 726, 803, 810-11).

      Again, substantial evidence backs the ALJ's conclusion. For example, ALJ cited records

that consistently show "normal inspection and palpation of digits and nails; [n]ormal gait; normal

station and stability" unlike Cambria's allegations of feeling pins and needles and burning in her

feet. Tr. 464; *see also* Tr. 452 ("Position sense and sensation are intact to prevent her from

falling and injuring herself."). And, contrary to Cambria's allegations of dizziness and vertigo,

the ALJ cited normal audiogram and MRI results. Tr. 23, 543-46, 554-56. Based on these

records, the ALJ reasonably concluded that Cambria's allegations of disabling symptoms are not

entirely consistent with the medical record. *Thomas,* 278 F.3d at 959 ("If the ALJ's credibility

finding is supported by substantial evidence in the record, we may not engage in second-

guessing."); *Campbell v. Saul*, 848 F. App'x 718, 721-22 (9th Cir. 2021) (upholding ALJ's

rejection of subjective symptom testimony in part because his complaints were not supported by

any medical source opinion).

      As for Cambria's mental health treatment, the ALJ discussed an October 2017

psychodiagnostic evaluation by Thomas Brent Shields, Ph.D. Tr. 22, 24, 454. Dr. Shields

conducted a clinical interview, reviewed records, and conducted a mental status examination. Tr. 454. As the ALJ correctly summarized, Dr. Shields reported that Cambria's gait, posture, and use of gestures was normal; her speech was normal in volume, rate, rhythm, and tone; her mood was depressed, affect appropriate, and she smiled in response to humorous prompts; she maintained appropriate eye contact; and she followed typical rules of social discourse. Tr. 22, 457. As the ALJ discussed, on testing, Cambria spelled "world" forward and backward, repeated a string of seven digits forward and four digits backward, and remembered three nouns after an intervening task. Tr. 22, 457. Dr. Shields estimated that Cambria's intelligence is in the "average range," with an intact fund of knowledge and ability to think abstractly. Tr. 22, 457. As the ALJ noted, Dr. Shields found Cambria's thought process goal-directed and sequential, with no evidence of pressured thinking, delusions, hallucinations, or derailment. Tr. 22, 457.

Dr. Shields opined that Cambria is capable of understanding, remembering, and carrying out simple and detailed instructions, finding that she could sustain concentration and engaged without significant disruption. Tr. 458. Dr. Shields further opined that it is reasonable to assume that intermittent spikes in depressive emotion and uncontrolled diabetes would lead to intermittent difficulty sustaining concentration on tasks over extended periods of time. Tr. 24. The ALJ discounted Dr. Shields opinion that Cambria would have intermittent difficulties in sustaining concentration, persistence, and pace because those findings are not supported by other medical evidence in the record. Tr. 24. Nevertheless, the ALJ limited Cambria to simple, routine, and repetitive tasks with only occasional public and coworker contact. Tr. 20, 24. Cambria does not challenge the ALJ's evaluation of the medical evidence from any physician, including Dr. Shields.

The ALJ addressed that Cambria has been diagnosed with major depressive disorder, a panic disorder, and cannabis use. Tr. 22, 458-59. The ALJ also noted other mental status examination findings consistently revealed that Cambria is alert, oriented, pleasant, and cooperative in social situations, with intact insight and judgment, and generally logical and goal directed thought process and content. Tr. 22, 24 (citing Tr. 397, 402, 415, 422, 430, 436, 464-65,478, 483, 555, 571, 585-87, 661-63, 681-83, 702, 712, 716, 721, 726, 730, 734, 738, 742, 746, 782-83, 800-03, 811). The ALJ noted that Cambria has been treated with therapy and multiple medications, including paroxetine, alprazolam, buspirone, duloxetine, mirtazapine, topiramate, and escitalopram, with some improvement in her symptoms. Tr. 23 (citing Tr. 373, 385, 395, 463-65, 596-97, 699, 889-90, 895).

The ALJ's findings are backed by substantial evidence. As the ALJ observed, Cambria reported variable symptoms of depression and anxiety, and that when she attended therapy and took medication consistently, she reported improvement. Thus, based on these findings, the ALJ reasonably could conclude that Cambria's mental health limitations are inconsistent with her allegations of debilitating depression, fatigue, and panic attacks. *Carmickle*, 533 F.3d at 1161 (finding contradiction with the medical record an appropriate basis to reject claimant's subjective symptom testimony); *Adaline S. G.*, 2021 WL 5316987, at *5 (holding ALJ reasonably concluded claimant's subjective assertions were undermined by lack of objective medical evidence); *Kellie Ann B. v. Comm'r Soc. Sec. Admin.*, Case No. 1:18-cv-01427-HZ, 2019 WL 2518120, at *4-5 (D. Or. June 18, 2019) (holding ALJ appropriately discounted claimant's allegations of extreme limitations where MRI revealed mild findings).

Although Cambria disagrees with the ALJ's analysis, the ALJ's findings are fully supported by substantial evidence, are a reasonable interpretation of that evidence, and therefore must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *see also Kevin R. H. v. Saul*, Case No. 6:20-cv-00215-IM, 2021 WL 4330860, at *8 (D. Or. Sept. 23, 2021) (rejecting claimant's suggestion that ALJ cherry-picked record and that his mental health symptoms wax and wane where ALJ's findings adequately supported and were reasonable interpretation of record).

In summary, the ALJ provided specific, clear and convincing reasons, backed by substantial evidence and supported by reasonable inferences drawn from the record, for rejecting Cambria's subjective symptom testimony. The ALJ's findings are sufficiently specific to permit the court to conclude that Cambria's subjective symptom testimony was not arbitrarily discredited; the ALJ did not err. *Brown-Hunter*, 806 F.3d at 493.

## CONCLUSION

For the reasons stated above, Cambria's Motion to Strike (ECF No. 26) is GRANTED, the Commissioner's final decision is AFFIRMED, and this action is DISMISSED.

IT IS SO ORDERED.

DATED September 19, 2022.

_____
JEFFREY ARMISTEAD
United States Magistrate Judge

Page 14  – OPINION AND ORDER